```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN THOMPKINS                 :     CIVIL ACTION
                                :
          v.                    :
                                :
MERCY PHILADELPHIA HOSPITAL,    :     NO. 10-2188
et al.
```

MEMORANDUM

Bartle, C.J.                                       September 20, 2010

       Plaintiff Karen Thompkins ("Thompkins") brings this action against defendants Mercy Philadelphia Hospital ("Mercy"), Anthony Zapisek ("Zapisek"), Patricia Morton ("Morton"), and Arthur Fastman ("Fastman") in which she alleges racial discrimination and harassment in employment in violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)-(2); 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 955(a).  She also asserts retaliation claims under the PHRA, 43 Pa. Stat. Ann. § 955(d) and Title VII, 42 U.S.C. § 2000e-3(a)(1).  Before the court is the motion of all defendants to dismiss in part for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

       When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to

the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "'mere possibility of misconduct.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.

II.

According to the complaint, Thompkins is an African-American female and a registered psychiatric nurse.  She was hired by Mercy on February 8, 2008 and remains a full-time employee.  Thompkins' allegations of racial discrimination and harassment stem from the actions of three supervisors at the hospital, Zapisek, Morton, and Fastman who are all Caucasian.

When Thompkins first came to Mercy, she was supervised by Zapisek.  He subjected her to "regular, pervasive, and persistent harassment" and a "hostile work environment."  Zapisek refused to orient her to the entire psychiatric unit, denied her the opportunity to work overtime, and failed to inform Thompkins of promotion opportunities, all allegedly because of her race.

At the same time, Zapisek gave white nurses overtime and promotions.  Finally, Zapisek disciplined Thompkins for an altercation with a co-employee while failing to discipline a similarly situated white nurse.

In the summer of 2009, Morton replaced Zapisek as Thompkins' manager.  Morton attempted to remove Thompkins from the hospital schedule based on the mistaken belief that she failed to take a mandatory tuberculous test.  Thompkins also maintains Morton discriminated against her during a yearly performance review, in which she received a rating of "poor."  According to Thompkins, both Morton and Zapisek participated in her review, although it was customary that only one manager do so.  Afterwards, Thompkins complained about the review and "discrimination and harassment" in general.  Morton purportedly retaliated against Thompkins for her allegations of discrimination by overburdening her with work and reporting her to Human Resources after missing work due to a death in the family.  She also refused to pay Thompkins for meal breaks while paying similarly situated white nurses and sent Thompkins an email filled with "vulgarity and profanity."

During the relevant time period, Fastman supervised Zapisek.  Fastman visited the hospital on his day off to accuse Thompkins and another employee of an unspecified violation.  When Thompkins challenged the accusation, Fastman rescinded the reprimand for the other employee but did not do the same for

Thompkins. No other allegations are made against Fastman in the complaint.

In May 2009, Thompkins dual filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination and harassment. Thompkins filed a second complaint with the EEOC and PHRC in August, 2009 alleging retaliation and discrimination. The EEOC issued Thompkins a notice of right to sue for her first complaint on March 1, 2010. The EEOC issued a second notice of right to sue for Thompkins' retaliation complaint on April 28, 2010. On May 12, 2010, Thompkins filed her complaint in this court.

III.

We begin with the defendants' motion to dismiss Thompkins' hostile work environment claims under Title VII, § 1981, and the PHRA.[1] To establish a prima facie case of racial discrimination based on hostile work environment, a plaintiff must prove that: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would negatively affect a reasonable person in

---

1. The legal standards for a § 1981 case are generally identical to those of a Title VII case. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009). Similarly, Pennsylvania courts interpret Title VII and the PHRA as coextensive. Atkinson v. Lafayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Therefore, we will not undertake a separate analysis where Thompkins' claims rely on more than one of these statutes.

-4-

the same position; and (5) respondeat superior liability exists. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).

To prove the second element, a plaintiff must show "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). Courts must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Applying this standard, our Court of Appeals, in Davis v. City of Newark, upheld the dismissal of a racial hostile work environment claim where the plaintiff was wrongly disciplined several times, called "a pain in my balls," ignored by co-workers who spoke only Spanish in her presence, had her tires slashed, and was eventually transferred from her squad. 285 Fed. App'x 899, 901-02 (3d Cir. 2008). Similarly, in Walton v. Mental Health Association of Southeastern Pennsylvania, the Court of Appeals upheld the district court's grant of summary judgment in a hostile work environment case based on disability discrimination where the plaintiff claimed that her supervisor threatened to fire her, called her "manic depressive," repeatedly

-5-

called her while she was hospitalized, and forbid other employees from speaking with her.  168 F.3d 661, 667 (3d Cir. 1999).  In doing so, the court noted that evidence of a plaintiff's poor relationship with her supervisor does not by itself give rise to a hostile work environment claim.  Id.

District Court precedent also demonstrates what type of conduct is insufficient to sustain a hostile work environment claim.  In Harris v. SmithKline Beecham, the plaintiff alleged racial discrimination based on a lack of training and software, threatened demotion, undesirable assignments, and an isolated racial comment by her supervisor.  27 F. Supp. 2d 569, 578 (E.D. Pa. 1998).  The court granted summary judgment for the employer, reasoning that none of these actions was "physically threatening or interfered with the plaintiff's ability to do her job."  Id.

In contrast, in Cardenas v. Massey, the plaintiff's supervisor subjected him to ethnic slurs by calling him a "wetback," "boy from the barrio," and spreading rumors that he was an affirmative action hire.  269 F.3d 251, 258-59 (3d Cir. 2001).  The supervisor also discriminated in facially neutral ways, by sabotaging his work and giving him unsatisfactory job evaluations.  Id. at 259.  Based on this evidence, the Court of Appeals concluded that a reasonable jury could find a hostile work environment based on national origin.  Id. at 263.  And in Aman v. Cort Furniture Rental Corp., the Court of Appeals found sufficient evidence of a racially hostile work environment to preclude summary judgment where white supervisors called black

employees "one of them," told them "not to steal," and said "the blacks are against the whites." 85 F.3d 1074, 1082-83 (3d Cir. 1996). In doing so, the court found that while overt racial harassment is not required, a plaintiff must at least show that race was a substantial factor in her treatment. Id. at 1083.

According to the complaint, Thompkins was disciplined three to four times, refused an opportunity for orientation, denied payment for lunch breaks, and not granted overtime. Thompkins claims she was not informed of promotion opportunities, but the complaint does not allege that she inquired about or applied for any promotions. Aside from one alleged email, Thompkins points to no racially discriminatory comments or insults by anyone at Mercy. Although she concludes that this email was vulgar and profane, Thompkins does not set forth what the email said. Thompkins' assertions that she was subject to "regular, pervasive, and persistent harassment" and a "hostile work environment" are mere conclusory statements and insufficient to sustain her claim. Fowler, 578 F.3d at 210.

Nothing in Thompkins' complaint shows that the defendants' actions were physically threatening, frequent, or interfered with Thompkins' ability to perform her job. And like the plaintiffs in Davis and Harris, Thompkins' allegations of wrongful disciplinary actions do not rise to the level necessary for an actionable hostile work environment. See Davis, 285 Fed. App'x at 901-02; Harris, 27 F. Supp. 2d at 578. Thompkins may have a poor relationship with her supervisors, but this also is

not enough to state a claim for racial harassment.  Walton, 168 F.3d at 667.

In contrast to the plaintiffs in Cardenas and Aman, Thompkins can point to no racially discriminatory comments made by anyone at Mercy.  The defendants' conduct simply was not enough to "transform the ordinary tribulations of the workplace into a legally cognizable hostile work environment claim."  Haqq v. Pa. Dep't of Pub. Welfare, No. 09-0042, 2010 WL 1253452, at *9 (E.D. Pa. Mar. 23, 2010) (citing Lester v. Natsios, 290 F. Supp. 2d 11, 31 (D.D.C. 2003)).  Even when viewed in the light most favorable to Thompkins, the defendants' conduct was not sufficiently severe or pervasive to alter the terms or conditions of employment.  Morgan, 536 U.S. at 116.  Therefore, Thompkins' hostile work environment claims in Counts I, IV, and V must be dismissed.[2]

We next consider the disparate impact claim raised by Thompkins in Count II of her complaint.  As a preliminary matter, the court notes that although Thompkins cites to the disparate impact provision of Title VII in Count II, her complaint is

---

2. We note that much of this conduct, including Mercy's failure to offer overtime, to promote, and to pay for lunch breaks, also forms the basis of Thompkins' disparate treatment claim. Although the Court of Appeals has not addressed the issue, several courts have questioned whether evidence of disparate treatment can also form the basis of a hostile work environment claim. Haqq v. Pa. Dep't of Pub. Welfare, No. 09-0042, 2010 WL 1253452, at *9 n.9 (E.D. Pa. Mar. 23, 2010).  Because we conclude that the complaint allegations are not sufficiently severe or pervasive to support a hostile work environment claim, we need not reach this issue.

filled with disparate treatment allegations. Thompkins also uses the terms disparate impact and disparate treatment interchangeably in response to the defendants' motion to dismiss. Thus, it is unclear which theory she is pursuing. We will therefore consider Thompkins' racial discrimination claims under both disparate impact and disparate treatment theories.

The Supreme Court has explained that disparate impact and disparate treatment are two independent and distinct theories of discrimination. In a disparate treatment case, an "employer simply treats some people less favorably than others because of their race." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). In contrast, disparate impact cases "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." Id. (quoting Teamsters, 431 U.S. at 335 n.15). Thus, disparate treatment claims focus on intent while disparate impact claims concentrate on effect. Teamsters, 431 U.S. at 335-36.

To establish a prima facie case of disparate impact, a plaintiff must first identify a specific employment practice that is facially neutral. Foxworth v. Pa. State Police, 402 F. Supp. 2d 523, 534 (E.D. Pa. 2005) (citing Wards Cove Packing Co. v. Antonio, 490 U.S. 642, 656-67 (1989)). In her complaint, Thompkins fails to identify any facially-neutral policy of Mercy that has a racially discriminatory impact. Instead, Thompkins

claims that the defendants purposefully treated her differently because of her race.  Therefore, to the extent that Thompkins bases her racial discrimination claims on disparate impact, Count II fails.

To establish a prima facie case of disparate treatment, a plaintiff must show that:  (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) the action occurred "under circumstances that give rise to an inference of unlawful discrimination."  Beaubrun v. Thomas Jefferson Univ., 578 F. Supp. 2d 777, 782 (E.D. Pa. 2008) (quoting Jones v. Sch. Dist. of Pa., 198 F.3d 403, 410-11 (3d Cir. 1999)).  In a discrimination case, the Supreme Court has defined an adverse employment action as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits ... A tangible employment action [that] inflicts direct economic harm."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998).

Taking her factual allegations as true, Thompkins was "the person best able and most competent to perform her job." She claims she was treated differently than similarly situated white nurses.  Such treatment took the form of tangible economic detriments, including the failure to promote, assign overtime, and pay for meal breaks.  There was also a difference in discipline for her and a similarly situated white nurse.  In our

view Thompkins has pleaded a prima facie case of disparate treatment under Title VII and the PHRA in Counts I and V.

Finally, we turn to the motion of defendants to dismiss Thompkins' retaliation claim under the PHRA, found in Count VI. A plaintiff must first file a PHRA claim with the PHRC. Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997)). The PHRC then has exclusive jurisdiction for one year over the claim. Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001) (citing 43 Pa. Stat. Ann. § 962). If the PHRA fails to act within a year, the plaintiff may proceed in federal court. James v. Int'l Bus. Machines, 737 F. Supp. 1420, 1426-27 (E.D. Pa. 1990).

Here, Thompkins filed her retaliation complaint with the PHRC in August, 2009. She then filed her complaint in this court nine months later, on May 12, 2010. The PHRA did not act on her complaint before that time. Therefore, Thompkins failed to exhaust her administrative remedies before filing her PHRA retaliation claim in this court. Because Thompkins filed her complaint before the expiration of the exclusive one-year PHRA jurisdiction, we will dismiss the PHRA retaliation claim without prejudice. Tlush, 315 F. Supp. 2d at 656.

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KAREN THOMPKINS                   :     CIVIL ACTION
                                  :
        v.                        :
                                  :
MERCY PHILADELPHIA HOSPITAL,      :     NO. 10-2188
et al.
```

ORDER

AND NOW, this 20th day of September, 2010, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendants to dismiss the claims of plaintiff for hostile work environment in Counts I, IV, and V, and the claim for disparate impact in Count II is GRANTED;

(2) the motion of defendants to dismiss the claim of plaintiff for retaliation under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 955(d) in Count VI is GRANTED without prejudice; and

(3) the motion of defendants to dismiss is otherwise DENIED.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                    C.J.